**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARVENIA D. GRAHAM,

                                        Plaintiff,

                - v -                                    Civ. No. 1:08-CV-892
                                                              (RFT)

CITY OF ALBANY; THOMAS J. BRESLIN;
MATTHEW ECKER; SERGEANT KEVIN McKENNA;
SERGEANT KUCK; COMMANDER BURRIS BEATTIE;
ALBANY POLICE DEPARTMENT; RANDALL KEHOE, ESQ.;
CHRISTIAN D'ALESSANDRO; ANTHONY CRUDO;
DAVID SOARES; COUNTY OF ALBANY;
GENERAL CASUALTY INSURANCE COMPANY,

                                        Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

MARVENIA D. GRAHAM
Plaintiff, *Pro se*
49 West Main St. C-15
Canton, NY 13617

CITY OF ALBANY CORPORATION COUNSEL        JOHN J. REILLY, ESQ.
Attorney for Defendant City of Albany
and Albany Police Department Defendants
City Hall, 24 Eagle St.
Albany, NY 12207

THUILLEZ, FORD LAW FIRM                    WILLIAM C. FIRTH, ESQ.
Attorney for Defendants Breslin and
General Casualty Insurance Company
20 Corporate Woods Blvd. 6th Floor
Albany, NY 12211-1715

D'AGOSTINO, KRACKELER LAW FIRM             REBEKAH R. KENNEDY, ESQ.
Attorney for Albany County Defendants      KATHLEEN M. RYAN, ESQ.
Christian D'Alessandro, Anthony Crudo, and
David Soares

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**[1]

*Pro se* Plaintiff Marvenia Graham brings this civil rights action, pursuant to 42 U.S.C. §§ 1983 & 1985, alleging that the Defendants violated her constitutional rights by conspiring to cover-up a "hit-and-run" of her automobile perpetrated by Defendant Thomas J. Breslin. Dkt. No. 13, Am. Compl. Specifically, Plaintiff alleges Defendants conspired against her and violated her rights to due process, access to the courts, and equal protection under the law. *Id.*

Presently before the Court are three separate Motions to Dismiss: one brought by Defendants City of Albany, Albany Police Department, Matthew Ecker, Kevin McKenna, Burris Beattie, and Sergeant Eric Kuck,[2] Dkt. No. 27; another brought by Defendants Thomas Breslin and the General Casualty Insurance Company, Dkt. No. 35; and a third brought by Defendants Christian D'Alessandro, Anthony Crudo, and David Soares, Dkt. No. 46.[3] Plaintiff has opposed the Defendants' Motions. Dkt. Nos. 41 & 50.

For the reasons that follow, the Defendants' Motions to Dismiss are **GRANTED** and the Amended Complaint shall be **DISMISSED** in its entirety.

**I. BACKGROUND**

---

[1] By an Order, dated January 7, 2009, the parties consented to the jurisdiction of this Court over all proceedings in this case pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. Dkt. No. 12.

[2] The Docket caption fails to reflect that Defendants Ecker, McKenna, Kuck, and Beattie have been served with process. Service was accepted on behalf of these Defendants by their attorney, City of Albany Corporation Counsel Office's William Kelly, Esq., of counsel, on March 2, 2009. Dkt. No. 19.

[3] The only Defendant who has not yet moved for dismissal is Randall Kehoe, Esq. Defendant Kehoe was served with process and filed an Answer to the Amended Complaint. Dkt. Nos. 21-22. However, as explained below, Plaintiff's claims against Kehoe are nonetheless dismissed. *See infra* Part II.H.

The following facts are derived from Plaintiff's Amended Complaint, which, in accordance with the standard for deciding a Motion to Dismiss, pursuant to FED. R. CIV. P. 12(b)(6), must be accepted as true.[4]  *See infra* Part II.A.

On September 8, 2004, at approximately 6:10 a.m., Plaintiff's car was struck by another vehicle as she was driving along Interstate Route 90 in Albany, New York.  The collision forced Plaintiff off the highway where she crashed into a cement highway divider.  Dkt. No. 13, Am. Compl. at ¶¶ 10-11.  The dark green car that hit her sped away from the crash scene, but not before Plaintiff viewed part of its New York State license plate number, "3TX."  *Id.* at ¶ 25.  Another citizen who observed the collision called the police, and thereafter, Defendant Officer Matthew Ecker of the Albany Police Department (APD) arrived at the scene.  Plaintiff described to Ecker what happened and told him the color and partial license plate number of the car that ran her off the road.  *Id.* at ¶¶ 18-26 & 32.  Plaintiff sustained the following injuries from the collision: chronic whiplash, broken jaw, facial nerve damage, headaches, fibromyalgia, and shoulder, hip, and pelvic misalignment.  *Id.* at ¶ 15.

On or around September 14, 2004, in Albany, New York, Plaintiff spotted a green car with a male driver that she believed to be the car and driver that hit her.  Later that evening, she called the APD to report the car's complete New York license plate number, "3TX540."  *Id.* at ¶ 59. Plaintiff was told to contact Ecker, the reporting officer, with her new information.  After several attempts, Plaintiff finally got in touch with Ecker and indicated to him her belief that the green car with license plate number "3TX540" had hit her.  *Id.* at ¶¶ 65-66.  In late September 2004, Ecker

---

[4] Because of the standard for deciding motions to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), *see infra* Part II.A, the documentary evidence attached as Exhibits to Defendants' Motions to Dismiss and to Plaintiff's Responses thereto have not been considered in rendering this decision.  *See* Dkt. Nos. 27-2, 41-2, & 46-4.

indicated to Plaintiff that he was looking into the information she had given him, but had nothing additional to report.  Several days after the collision, Plaintiff again spotted the green "3TX540" vehicle, and this time took pictures of the car, which had suffered substantial damage to its body.  *Id.* at ¶¶ 73 & 81.

On September 16, 2004, Plaintiff received a copy of the Police Report (hereinafter "Report") written by Defendant Ecker.  *Id.* at ¶ 34.  Plaintiff discovered that the Report "insinuat[ed] that the damage on Plaintiff's vehicle was solely due to contact with the guardrail and/or the cement divider on the highway," and did not mention the collision with the green car.  *Id.* at ¶ 321.  Moreover, the Report did not include a description of the damage done to Plaintiff's vehicle or the green marks that were present on its body, nor did it include statements from any witnesses, including Plaintiff and the man who called the police.  *Id.* at ¶¶ 36-45 & 48-52.  Plaintiff alleges that "Ecker wrote a false and misleading Report to make it appear that Plaintiff was merely driving down the highway and incidentally, crashed her own vehicle."  *Id.* at ¶ 46.  However, the call ticket order from the APD states that "Plaintiff was hit by another vehicle" and that "a person[] other than the Plaintiff called[] to report the September 8th, 2004 incident."  *Id.* at ¶¶ 325-26.

Through an inquiry with the Department of Motor Vehicles (DMV), Plaintiff discovered that Defendant Thomas Breslin was the owner of the "3TX540" green car.  *Id.* at ¶¶ 77 & 81.  After several unsuccessful attempts to contact Ecker, Plaintiff wrote to Sergeant McKenna, head of APD's Traffic Division.  After receiving no response from McKenna, Plaintiff contacted the Albany County District Attorney's Office on July 14, 2005, and spoke with Defendant Christian D'Alessandro, who told Plaintiff to follow up with Ecker, the author of the Report.  *Id.* at ¶¶ 82-86.  On August 30, 2006, Plaintiff again spoke with D'Alessandro, who this time instructed Plaintiff to contact

Defendant Sergeant Kuck in APD's Internal Affairs Division.  *Id.* at ¶¶ 88-89.  Plaintiff informed Kuck about the hit-and-run, but Kuck failed to take any action on her behalf.  *Id.* at ¶¶ 90-93.  Later, Plaintiff made contact with Defendant Commander Burris Beattie, who told her that the matter "was never an Internal Affairs case, and he was sorry to inform [Plaintiff] that he could not help [her]." *Id.* at ¶ 103.

On November 29, 2007, Plaintiff spoke directly with David Soares, Albany County District Attorney (DA), describing the events that had transpired and advising him of her belief that Thomas J. Breslin was the driver of the car that hit her.  *Id.* at ¶¶ 140-43.  Soares took her contact information, and within two weeks of that conversation, Plaintiff received a call from D'Alessandro who said he was going to assign Defendant Detective Anthony Crudo to her case.  *Id.* at ¶¶ 104-05. On December 7, 2007, Plaintiff explained the situation to Crudo, who asked her questions about insurance money she had received from the collision, which made Plaintiff feel "leery."  *Id.* at ¶¶ 110-112 & 145.  Plaintiff told Crudo she was awarded $12,500, but that she was not accepting the payment because it did not cover her medical bills.  *Id.* at ¶¶ 151-52.  Thereafter, Crudo notified Plaintiff that the APD would assist her no longer, and urged her to either drop the case or pursue a civil action.  *Id.* at ¶ 156.  However, he continued to question Plaintiff, "asking her what [] she [had] heard from [Breslin's] automobile insurance company;" Plaintiff responded by asking Crudo if he was gathering information from her to relay back to Breslin, an accusation that garnered no response from Crudo.  *Id.* at ¶¶ 158-60.

Later, Plaintiff met with Crudo and D'Alessandro at the DA's office, where Plaintiff displayed photographs she had taken of the damage to both her car and Breslin's car.  *Id.* at ¶¶ 173-78.  Plaintiff expressed her desire that criminal charges be brought against Breslin.  On May 22,

2008, Plaintiff submitted an "in-depth written account of the hit-and-run accident" to the DA's office. *Id.* at ¶ 197. And, despite D'Alessandro's statement that day to Plaintiff that an investigation into the matter was pending, no criminal charges were ever filed against Breslin. *Id.* at ¶¶ 198-200.

On September 6, 2005, Breslin's car insurer, General Casualty Insurance Company ("General Casualty") was notified about his participation in the hit-and-run, but they also took no action. *Id.* at ¶¶ 216 & 219. During a conversation with a General Casualty representative, Plaintiff was told that Breslin had filed a claim for an accident that allegedly occurred in Washington, D.C., on September 10, 2004, for which General Casualty paid him $4,000. *Id.* at ¶ 221. Plaintiff requested a copy of the police report from that incident, but General Casualty denied possessing any such document. *Id.* at ¶ 222-23.

Plaintiff struggled to find legal representation until she retained Defendant Randall Kehoe, Esq., in December 2006. *Id.* at ¶ 115. Plaintiff showed Kehoe the photographs of her vehicle and Breslin's vehicle, and he agreed to assist her "in instituting civil and/or criminal proceedings against [] Breslin and his automobile insurance company." *Id.* at ¶¶ 118 & 122. However, on January 3, 2007, Kehoe informed Plaintiff that he could not help her pursue claims against Breslin because "her story was not going to stick," and told her she would be better off pursuing her own insurance company for no-fault benefits. *Id.* at ¶¶ 125 & 134. At Kehoe's insistence, Plaintiff altered their retainer agreement by crossing out Breslin's name and the name of his auto-insurer, General Casualty, and putting her initials next to the cross-outs. *Id.* at ¶¶ 127-130.

Plaintiff brings the following causes of action against the Defendants:

1.    Malicious Abuse of Process against Defendants Ecker, McKenna, Kuck, Beattie, City of Albany, Soares, D'Alessandro, Crudo, and Albany County;

2.    Denial of Access to the Courts against Defendants Ecker, Soares, and Kehoe;

*-6-*

3.      Denial of Equal Protection against Defendants Ecker, McKenna, Kuck, Beattie, City of Albany, Soares, D'Alessandro, Crudo, and Albany County;

4.      Conspiracy to Violate her Civil Rights against all Defendants;

5.      Supervisory Liability against Defendants City of Albany and Albany County;

6.      Denial of Due Process against all Defendants.

*Id.* at ¶¶ 228-389.

## II.  DISCUSSION

### A.  Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice."  *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn

-7-

from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950-51.

**B.  Statute of Limitations**

All of the moving Defendants contend in their respective Motions that Plaintiff's claims are barred by the statute of limitations (SOL).  Dkt. Nos. 27, 32, & 46.  In § 1983 actions, the applicable statute of limitations is a state's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).  In New York, a three-year statute of limitations applies for personal injury actions, and thus to § 1983 actions as well.  *Id.*; *see also* N.Y.C.P.L.R. § 214(5).  Federal constitutional claims accrue when the plaintiff "knows or has reason to know" of the injury that is the basis for her action.  *Pauk v. Bd. of Tr. of City Univ. of New York*, 654 F.2d 856, 859 (2d Cir. 1981); *see also Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001).

Defendants assert that Plaintiff knew or had reason to know of the alleged harm on or about September 16, 2004, the date she received a copy of Ecker's Report.  Dkt. Nos. 27 at pp. 5-6, 32 at pp. 2-3.  Alternatively, Defendants posit that the accrual date for the SOL should be June 20, 2005, the date Plaintiff asserts she went to APD and was told that there were no other reports nor information relating to the collision.  *Id.*; Am. Compl. at ¶ 78.  Plaintiff does not challenge those asserted accrual dates, but counters that the SOL was tolled for the following reasons: (1) the Defendants were "united in interest;" (2) she suffered from certain medical conditions; (3) she attempted to arbitrate her medical claims against her insurance company; (4) she initiated a state court action; (5) she was the victim of a crime; (6)  application of the continuing violation doctrine; and (7) she was denied access to the courts.  Dkt. No. 41, Pl.'s Resp. to Defs.' Mots. to Dismiss at pp. 6-11.  We consider these arguments in order below.

First, under New York law, whether the Defendants were "united in interest" is the second prong in a three-pronged test used to decide whether the addition of a new party through an amended complaint will "relate back" to the time the original complaint was filed; it does not speak to

whether or not the SOL should be tolled for the filing of an original complaint. *See De Sanna v. Rockefeller Center, Inc*., 9 A.D.3d 596, 597-98 (N.Y. App. Div. 3d Dep't 2004). Therefore, the question of whether Defendants were "united in interest" is inapposite here because Plaintiff is not seeking to add a new party to this action.

Second, Plaintiff argues that the SOL should be deemed tolled due to her ongoing medical condition and/or disability. While a medical condition may be grounds for the equitable tolling of a SOL, *see, e.g., Brown v. Parkchester South Condominiums,* 287 F.3d 58, 60 (2d Cir. 2002), in this case, Plaintiff has failed to provide any details about the timing or nature of her alleged disability, *see* Pl.'s Resp. at p. 7 (asserting that she was "legally incapacitated at the time of the initial incident and could not perform normal functions and daily . . . activities"). Therefore, Plaintiff's conclusory allegation of a medical condition does not constitute grounds to equitably toll the SOL and, as an aside, such allegation is specious given Plaintiff's claims about her tireless efforts to seek justice. *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (denying equitable tolling because plaintiff's claim did not provide a "particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights").

Plaintiff cites to the New York Civil Practice Law and Rules ("CPLR") § 204(b) for the proposition that the SOL can be equitably tolled during the pendency of an arbitration demand. *See* Pl.'s Resp. at p. 8. CPLR § 204(b) "tolls the statute of limitations during the pendency of an arbitration that ends with a determination that there was no obligation to arbitrate." *Individual Securities, Ltd. v. Ross*, 152 F.3d 918 (2d Cir. 1998). However, Plaintiff alleges that she arbitrated her no-fault medical claims with her own insurance company, not that she attempted to arbitrate the constitutional claims now before this Court. Therefore, the SOL cannot be tolled on that basis.

*-10-*

Next, Plaintiff cites to *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350 (2004) and N.Y. INSURANCE LAW § 3420 for the proposition that the SOL should be deemed equitably tolled because she has a pending state court action against Defendant Breslin.  Pl.'s Resp. at p. 8.  N.Y. INSURANCE LAW § 3420 "grants an injured plaintiff the right to sue a tortfeasor's insurance company to satisfy a judgment obtained against the tortfeasor" once a judgment against that tortfeasor has been obtained. *Lang v. Hanover Ins. Co.*, 3 N.Y.3d at 352.  Here, Plaintiff has accused the Defendants, including Breslin and his insurance company, General Casualty, of constitutional violations under § 1983.  Plaintiff does not seek satisfaction for a judgment against a Defendant, nor does she allege that any such judgment has been obtained.  Therefore, this argument fails.  *See also Branch v. Guilderland Cent. School Dist.*, 239 F. Supp. 2d 242, 252 n.7 (N.D.N.Y. 2003) (citing cases for the proposition that the "Second Circuit has [] routinely refused to toll the statute of limitations for § 1983 claims during the pendency of state judicial proceedings").

Plaintiff asserts that pursuant to CPLR § 213-b, the SOL was tolled because she was the victim of a crime.  CPLR § 213-b provides a basis to equitably toll the SOL when an action by a crime victim is brought against a defendant who has been "convicted of a crime."  Plaintiff has made no allegation that any Defendant has been convicted of a crime and therefore, this argument is also without merit.

Plaintiff attempts to invoke the continuing violation doctrine as a basis for tolling the SOL.  The continuing violation exception "extends the limitations period for all claims of discriminatory acts committed *under an ongoing policy of discrimination* even if those acts, standing alone, would have been barred by the statute of limitations."  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (emphasis in original) (internal quotation marks and citation omitted).  A

continuing violation may also be found where there is proof of ongoing discriminatory practices. *Id.* at 766 (citation omitted).  As a general rule, courts in this Circuit "have viewed continuing violation arguments with disfavor."  *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 244 (S.D.N.Y. 2000) (citing cases).

Here, there is no allegation that Defendants' alleged actions were part of a common policy or practice.  In that respect, "[d]iscrete incidents of discrimination that are unrelated to an identifiable policy or practice . . . will not ordinarily amount to a continuing violation, unless such incidents are specifically related and are allowed to continue unremedied for so long as to amount to a discriminatory policy or practice."  *Id.* (internal quotation marks and citation omitted).  To the extent Plaintiff's claims against the various Defendants can be characterized as discriminatory, they are related only by their inclusion in Plaintiff's conspiracy claim.  Indeed, there is no apparent connection between the separate acts of Breslin, a private citizen, Kehoe, Plaintiff's former attorney, and those of the other Defendants serving in the APD and DA's office, nor do the alleged acts plausibly suggests the existence of a unified ongoing discriminatory practice or policy.  Therefore, the continuing violation doctrine is inapplicable here.

Lastly, Plaintiff suggests that the SOL be tolled based on her inability to access the courts as a consequence of Defendants' actions.  Though Plaintiff asserts that she failed to induce the DA's office to bring criminal charges against Breslin, Pl.'s Resp. at p. 9, she does not allege how that office's actions prevented her from filing a civil action, and in fact, Plaintiff alleges that she has been able to pursue a civil action against Breslin in state court.  Moreover, as explained further in Part II.C *infra*, Plaintiff has failed to identify how her civil claims were hindered by Defendants' alleged actions.

For these reasons, we find Plaintiff's tolling arguments to be without merit.  With respect to the accrual date of Plaintiff's conspiracy claims, the Second Circuit has held that

> [t]he crucial time for accrual purposes is when the plaintiff becomes aware that [she] is suffering form a wrong for which damages may be recovered in a civil action.  To permit [her] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable [her] to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.

*Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (internal quotation marks and citation omitted).  Here, Plaintiff became aware of the Defendants' alleged actions at the time they occurred.  Thus, because there is no basis to deem the SOL equitably or statutorily tolled, only those claims arising out of alleged acts that occurred on or after August 20, 2005 (three years prior to Plaintiff's submission of the original Complaint) are timely.  However, even considering all of Plaintiff's constitutional claims as timely, they still fail to state a valid claim.

## C.  Failure to Prosecute

The crux of Plaintiff's case is that she was deprived of a criminal investigation into her automobile accident and a criminal complaint being lodged against Defendant Breslin.  Yet, seminal constitutional principles tell us that a plaintiff does not have a constitutional right to bring or to compel a criminal prosecution against one whom she alleges caused her injury and damages.  *Chandler v. Carroll*, 2009 WL 2514428, at * 5 (D.Vt. Aug. 12, 2009) ("It is well settled law that a private citizen does not have a constitutional right to bring a criminal complaint against another individual.") (citations omitted); *Price v. Hasly*, 2004 WL 1305744 (W.D.N.Y. June 8, 2004).  Initiating a criminal complaint or prosecution rests solely within the discretion of district attorneys.  Moreover, "a citizen lacks standing to contest the policies of the prosecuting authority when [s]he is neither prosecuted nor threatened with prosecution."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619

(1973); *In re Appointment of Indep. Counsel*, 766 F.2d 70, 75-76 (2d Cir. 1985) (quoting *Linda R.S.,*

410 U.S. at 619, for the proposition that a "private citizen lacks a judicially cognizable interest in

the prosecution or nonprosecution of another"). In any event, a prosecutor's decision to initiate a

criminal prosecution, or not, is protected with absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409

(1976); *Doe v. Phillips*, 81 F.3d 1024, 1210. Here, DA Soares and his staff, Defendants

D'Alessandro and Crudo, are cloaked with absolute immunity and thus entitled to **dismissal** of any

such claims of failure to prosecute. Notwithstanding the controlling implications of this Ruling, the

Court must consider Plaintiff's other constitutional claims, which are substantively similar to her

failure to prosecute claim, but analytically distinct.

### D.  Access to the Courts

In her Second Cause of Action, Plaintiff alleges that Defendants Ecker and Soares[5] violated

her First Amendment right to access the judicial system by failing to investigate and bring criminal

charges and by inhibiting her ability to pursue civil actions against Breslin. To state a claim for

denial of access to the courts, a plaintiff must allege that (1) the defendant acted deliberately and

maliciously, and (2) the plaintiff suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353

(1996); *Cusamano v. Sobek*, 2009 WL 211155, at *50 (N.D.N.Y. Jan. 26, 2009). In this case,

Plaintiff alleges that Ecker's falsification of the Report hindered her ability to bring civil claims.

Am. Compl. at ¶¶ 273, 289, & 292. However, according to Plaintiff, in addition to the instant

federal lawsuit, she initiated a tort action against Defendant Breslin in state court, and has deposed

Breslin in connection with that lawsuit. Am. Compl. at ¶¶ 150 & 201. Thus, Plaintiff has not been

denied actual access to the courts, nor do her allegations suggest a deprivation of meaningful access

---

[5] Plaintiff also lists Defendant Kehoe as one who denied her access to the courts. We discuss Plaintiffs claims against Kehoe in Part II.I *infra*.

to the courts. *Lewis v. Casey*, 518 U.S. at 354; *see also Williams v. Savage*, 538 F. Supp. 2d 34, 42 (D.D.C. 2008) (denying motorist-plaintiffs' claims that an inaccurate police report denied them access to the courts because they were "free to avail themselves of the courts and fully engage in the adversarial process").

Plaintiff has failed to explain how Defendants' actions frustrated or impeded her efforts to pursue a non-frivolous legal claim. Ecker's alleged falsification of the Report through his failure to interview witnesses, exclusion of Plaintiff's own statements, and failure to accurately document the damage to Plaintiff's car, would not and has not hindered Plaintiff's ability to bring a civil claim in state court. Under New York law, the Report itself would be considered hearsay, and any statements made by third parties (including Plaintiff) that were included or should have been included in the Report would constitute inadmissible hearsay within hearsay. Even Ecker's opinion is inadmissible hearsay. The business record exception to the hearsay rule would not apply in these circumstances because under New York law, police reports "must be excluded if the recording officer did not observe the matter personally *and* the declarant did not have a duty to make the statement to the recording officer." *Perfetto v. Hoke*, 898 F. Supp. 105, 114 (S.D.N.Y. 1995) (emphasis in original) (citing *Johnson v. Lutz*, 253 N.Y. 124, 128 (N.Y. 1930) (holding that the business records exception "was not intended to permit the receipt in evidence of entries based upon voluntary statements made by third parties not engaged in the business or under any duty in relation thereto")); *Lynn v. Bliden*, 443 F.3d 238, 252 (2d Cir. 2006) (citing *Perfetto* and finding the recording of a police officer's *personal observations* was not inadmissible hearsay); *see also matter of Leon RR*, 48 N.Y.2d 117, 122 (1979) (affirming *Johnson*'s holding that the reporter must be under a business duty to record the event, and the "informant must be under a contemporaneous business

-15-

duty to report the occurrence" to the reporter).  In this case, Ecker did not personally witness the collision, and neither Plaintiff nor any other potential witness had a duty to speak with Ecker and as such, the business records exception would not apply.  Thus, the alleged omissions from the Report could not and did not hinder Plaintiff's ability to meaningfully access the courts.

To the extent Plaintiff's access to the courts claim is based on Defendants' alleged refusal to investigate and/or prosecute Breslin, such claims are without merit for reasons stated above in Part II.C.  For these reasons, Plaintiff's access to the courts claim is **dismissed.**

### E.  Due Process Claims

In Plaintiff's First and Sixth Causes of Action, she accuses Defendants of violating her due process rights by failing to investigate and prosecute charges against Breslin, a failure Plaintiff alleges constituted a malicious abuse of process.  Am. Compl. at ¶¶ 228-263 & 382-389.

#### 1.  *Falsification of Report and Failure to Investigate*

Plaintiff alleges that Defendants Ecker, McKenna, Kuck, and Beattie failed to properly investigate her complaints and that Defendants D'Alessandro, Crudo, and Soares failed to prosecute Breslin for his alleged criminal actions.  Plaintiff also alleges that Defendant Ecker falsified and failed to include important information in his Report.

In order to bring a valid § 1983 claim, a plaintiff must establish that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). With respect to Plaintiff's claim that Ecker falsified or otherwise failed to properly document the collision that occurred on September 8, 2004, the "mere filing of false police reports, by themselves and without more, [does] not create a right of action in damages under 42 U.S.C. § 1983." *Bailey*

*v. Tricolla*, 1995 WL 548714, at *5 (E.D.N.Y. Sept. 12, 1995) (quoting *Landrigan v. City of Warwick*, 628 F.2d 736, 744-45 (1st Cir. 1980)); *see also Jarrett v. Township of Bensalem*, 2008 WL 818615, at *3 (E.D. Pa. Mar. 26, 2008) ("[T]he filing of a false police report is not itself a constitutional violation, even when the report is the result of an intentional conspiracy among police officers to cover up police misconduct.") *aff'd*, 312 Fed. Appx. 505 (3rd Cir. Feb. 20, 2009). However, a due process violation may lie if the filing of the false report leads to an unconstitutional deprivation of life, liberty, or property. *Landrigan v. City of Warwick*, 628 F.2d at 744-45 (citing *Paul v. Davis*, 424 U.S. 693 (1976)).

Here, Plaintiff does not allege that she was deprived of her life or liberty.  But, Plaintiff alleges that Defendants' actions, Ecker's falsification of the Report in particular, have hindered her ability to recover damages against Breslin in court.  Am. Compl. at ¶¶ 271-273, 288, & 291-292. Interpreting her *pro se* Amended Complaint liberally, Plaintiff asserts a property interest in her ability to recover money damages in a civil action.  However, the Fourteenth Amendment's Due Process Clause protects only those property interests to which a person has "a legitimate claim of entitlement," not those based solely on abstract hopes and expectations.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also Jarrett v. Township of Bensalem*, 2008 WL 818615 at *4 (holding that plaintiff had no property interest in "obtaining a large insurance settlement").  Moreover, as previously discussed, Plaintiff fails to make clear how Defendants hindered her ability to pursue a civil claim[6] against Breslin.  Because Plaintiff has failed to allege a legitimate claim of entitlement, we find she has failed to identify a cognizable property interest

_____

[6] To the extent Plaintiff's claim is based on her assertion that the Defendants prevented her from pursuing a criminal action against Breslin, Am. Compl. at ¶ 273, Plaintiff has no constitutionally protected interest in the criminal prosecution of another citizen.  *See supra* Part II.C.

*-17-*

of which she was deprived.  Therefore, Plaintiff's due process claims based on Ecker's alleged falsification of the Report are **dismissed**.

Moreover, the Due Process Clause does not guarantee the right to an investigation by government officials.  *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 196-97 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual," and as such, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *see also Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause."); *Longi v. County of Suffolk*, 2008 WL 858997, at *6 (E.D.N.Y. Mar. 27, 2008) (holding that "there is no constitutional right to an investigation by government officials").  Therefore, Plaintiff's claim that Defendants failed to investigate the alleged hit-and-run does not state a valid cause of action under § 1983 and must be **dismissed**.

### 2.  *Malicious Abuse of Process*

Plaintiff claims that the Defendants' actions constituted a malicious abuse of process.  The malicious abuse of criminal process has been held to violate the Fourteenth Amendment's Due Process Clause, and therefore, can constitute a valid cause of action under § 1983.  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  Federal courts look to state law for the elements of malicious abuse of process claims.  *Id.*  Under New York law, such claims must include the following three elements: (1) the defendant utilizes standard legal process to compel performance or forbearance of some act;

*-18-*

(2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Id.* (cited in *Sullivan v. LaPlante*, 2005 WL 1972555, at *8 (N.D.N.Y. Aug. 16, 2005)).

In this case, Plaintiff has not alleged that she was issued a form of legal process, such as a summons or complaint, in order to compel her performance or forbearance of some act. Rather, Plaintiff alleges Defendants conspired to protect Breslin and cover-up his crime. Therefore, Plaintiff has failed to state a valid malicious abuse of process claim and such claim is **dismissed**.

## F.  Equal Protection

In her Third Cause of Action, Plaintiff accuses Defendants of denying her Fourteenth Amendment right to equal protection under the law. Essentially, Plaintiff's claim is that the Defendants protected Breslin, shielded him from prosecution, and therefore, did not equally enforce the law. Am. Compl. at ¶¶ 310 & 334.

The Equal Protection Clause of the Fourteenth Amendment states "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It further "directs that all persons similarly situated . . . be treated alike." *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999) (internal citations and quotation marks omitted). As a general rule, the Equal Protection Clause protects suspect classes and fundamental rights against inequitable treatment. *LeClair v. Saunders*, 627 F.2d 606, 611 (2d Cir. 1980) (citing *Dandridge v. Williams*, 397 U.S. 471, 487 (1970)). However, an equal protection claim may be brought "by a 'class of one' where a plaintiff alleges that she has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362-63 (2d Cir. 2002)

(quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

To establish a valid equal protection claim based on selective enforcement, a plaintiff must demonstrate that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d at 609-10.  Here, Plaintiff does not allege that *she* was selectively treated as compared with others similarly situated, but that *Breslin* was afforded protection and therefore treated differently from other criminals.  Plaintiff does not have standing to assert a Fourteenth Amendment equal protection claim because she has not alleged that she was selectively treated in comparison to others similarly situated and no accord can be extended to this argument.  *See Lewis v. Gallivan*, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004) (noting that Supreme Court precedents "consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution"); *see also LeClair v. Saunders*, 627 F.2d at 608 ("Mere failure to prosecute . . . is not a basis for a finding of denial of equal protection.") (citation omitted).  Thus, the converse proposition – that Breslin was afforded greater protection than others – does not bestow standing upon Plaintiff either.

Plaintiff's reliance on *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003) is misplaced.  Dkt. No. 41, Pl.'s Resp. at p. 21.  In that case, the Second Circuit held that the plaintiffs had stated a facially valid equal protection claim against the defendant police officer who allegedly "subjected the plaintiffs to a different standard of police protection than any other citizens" when he maliciously and arbitrarily allowed plaintiffs' neighbors to harass and threaten them with impunity because the neighbors were his friends.  *Demuria v. Hawkes*, 328 F.3d at 705 (internal quotation marks omitted).

*-20-*

In this case, Breslin's alleged criminal acts preceded Plaintiff's contact with the other Defendants, and there is no allegation that those Defendants intentionally permitted the commission of additional criminal actions against Plaintiff after the alleged hit-and-run occurred.  Thus, as opposed to the police officer's behavior in *DeMuria*, Defendants' alleged failure to pursue Breslin did not cause any identifiable injury to Plaintiff.

For the above reasons, Plaintiff's equal protection claim is **dismissed**.

### G.  Conspiracy

Plaintiff brings claims of conspiracy against the Defendants pursuant to 42 U.S.C. §§ 1983 and 1985.  The third subsection of 42 U.S.C. § 1985, which is the only part of this statute applicable to the claims made in this case, states, in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the Untied States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with "(3) an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]"  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted).  "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national

*-21-*

origin, and sex." *Martin v. New York State Dep't of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (citations omitted).

To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).

In this case, Plaintiff fails to allege cognizable §§ 1985(3) and 1983 conspiracy claims because she identifies no underlying constitutional violation or injury. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("[A] plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights."); *see also D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 398 (S.D.N.Y. 2007) (noting that "as with a § 1983 conspiracy claim, actual infringement of a constitutional right is required" under § 1985(3)).  Although Plaintiff has alleged physical injuries that resulted from her collision with Breslin, those alleged injuries were not the result of the alleged conspiracy to cover-up his crime.  Therefore, because Plaintiff has not stated a valid constitutional injury as a result of the alleged conspiracy, her conspiracy claims are **dismissed**.  *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) ("[T]here is no constitutional violation in conspiring to cover-up an action which does not itself violate the constitution.").

## H.  Respondeat Superior/*Monell* Claim

In her Fifth Cause of Action, Plaintiff alleges that Defendants Albany County and City of Albany are liable "under the doctrine of respondeat superior for the intentional torts of government defendants committed within the scope of their employment."  Am. Comp. at ¶ 379.  Pursuant to

*Monell v. Dep't of Soc. Servs. of City of New York*, "a municipality cannot be held liable under §

1983 on a respondeat superior theory." 436 U.S. 658, 691 (1978).  A municipality may only be held

liable for constitutional claims under § 1983 if the alleged conduct was undertaken pursuant to "a

policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the

municipal] officers[,] . . . [or] governmental 'custom' even though such a custom has not received

formal approval through the . . . [municipality's] official decision[-]making channels." *Id.* at 690-91.

        In this case, Plaintiff fails to identify any policy or custom adopted by the City of Albany or

Albany County.  Moreover, because Plaintiff has failed to state any cognizable constitutional claim

against the individual Defendants, there can be no liability on the part of municipal Defendants

Albany County and the City of Albany.  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)

("Because the district court properly found no underlying constitutional violation, its decision not

to address the municipal defendants' liability under *Monell* was entirely correct.") (cited in *Van

Cleef v. Seneca County*, 2009 WL 1150407, at *6 (W.D.N.Y. Apr. 27, 2009)).  Therefore, Plaintiff's

respondeat superior/*Monell* claims are **dismissed**.

### I.  Remaining Claims

        Although it is unclear, Plaintiff appears to bring tort and other state-law based claims against

Ecker, Breslin, and possibly the other Defendants.  Am. Compl. at ¶¶ 204 & 293-94.  To the extent

Plaintiff intended to bring such claims, because we have found Plaintiff's federal constitutional

claims to be without merit, we decline to exercise continuing pendent jurisdiction over any such

remaining claims.

        Defendant Kehoe has not moved for dismissal in this case.  However, pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii), this Court has the discretionary power to *sua sponte* dismiss a *pro se* complaint

"at any time" for failure to state a claim on which relief may be granted.[7]  Plaintiff brings claims against Kehoe for denial of access to the courts, conspiracy, and due process.  Am. Compl. at ¶¶ 228-389 (Causes of Action Nos. 2, 4, & 6).  Plaintiff's claims that Kehoe independently violated her rights to due process and access to the courts must be dismissed because Kehoe is not a state actor, and thus not "clothed with the authority of state law," a necessary element under § 1983.  *Polk County v. Dodson,* 454 U.S. 312, 317-18 (1981) (internal quotation marks and citation omitted).  Liability may attach to a non-state actor if that person acts "jointly" with state actors to deprive constitutional rights, but in this case, Plaintiff has alleged no facts to suggest that Kehoe acted jointly with the other Defendants.  *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 271 (2d Cir. 1999) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).  In fact, there is no allegation that Kehoe had any interaction or agreement with the APD or DA's Office, Breslin, or General Casualty.  In addition, because we find that Plaintiff's access to the courts, conspiracy, and due process claims are wholly without merit as against the other Defendants, there is no basis upon which liability could attach to Kehoe based upon his connection to their alleged acts.

For the above reasons, the Court will **dismiss**, *sua sponte*, all claims brought against Kehoe pursuant to §§ 1983 and 1985 for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii).  To the extent Plaintiff intended to assert state-law tort or malpractice claims against Kehoe, the Court also declines to exercise continuing supplemental jurisdiction over those claims.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that the Defendants' Motions to Dismiss (Dkt. Nos. 27, 35, & 46) are

---

[7] On August 21, 2008, this Court granted Ms. Graham's Application to proceed *In Forma Pauperis*, Dkt. No. 3.  Thus, consideration of her claims under 28 U.S.C. § 1915(e) is appropriate.

**GRANTED**, and the Amended Complaint (Dkt. No. 13) is **DISMISSED**[8] in its entirety.

**IT IS SO ORDERED.**

Date:   November 23, 2009
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

---

[8] Because we find dismissal of the Amended Complaint appropriate under FED. R. CIV. P. 12(b)(6), we need not address Defendants' assertion of qualified immunity, nor Breslin's defense of insufficiency of process.